UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
HALPERT ENTERPRISES, INC., Derivatively on  :
Behalf of J.P. Morgan Chase & Co.,           :
                                             :
                                                    Plaintiff,      :
                                             :
               - against -                :
                                             :
                                             :
WILLIAM B. HARRISON, JR.,                    :
HANS W. BECHERER, RILEY P. BECHTEL,          :
FRANK A. BENNACK, JR., LAWRENCE A.           :
BOSSIDY, M. ANTHONY BURNS, H. LAURANCE       :
FULLER, ELLEN V. FUTTER, WILLIAM H.          :
GRAY, III, HELENE L. KAPLAN, LEE R.          :      06 Civ. 2331 (HB)
RAYMOND, JOHN R. STAFFORD, LLOYD D.          :
WARD, MARINA V. N. WHITMAN, JOHN H.          :      OPINION
BIGGS, WILLIAM C. WELDON, STEPHEN B.         :      AND ORDER
BURKE, JAMES S. CROWN, JAMES DIMON,          :
LABAN P. JACKSON, JR., JOHN W. KESSLER,      :
ROBERT I. LIPP, RICHARD A. MANOOGIAN, and    :
DAVID C. NOVAK,                              :
                                             :
                                                 Defendants,    :
                                             :
                 and                       :
                                             :
J.P. MORGAN CHASE & CO., a Delaware          :
Corporation,                                 :
                                             :
                              Nominal Defendant.  :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

       Plaintiff Halpert Enterprises, Inc. ("Plaintiff" or "Halpert") brings this shareholders' derivative action against William Harrison and other directors, officers, and members of the Board of Directors of J.P. Morgan Chase & Co. (collectively, "Defendants"). Halpert alleges derivative claims for breach of fiduciary duty, gross mismanagement, corporate waste, and violation of Section 14(a) of the Securities Exchange Act of 1934. The claims stem from Defendants' alleged failure to prevent J.P. Morgan Chase & Co. ("J.P. Morgan") from engaging in a series of activities, such as

transactions with Enron and Worldcom, that eventually cost J.P. Morgan over $4 billion in fines, civil litigation costs, and settlements.

Defendants move to dismiss Plaintiff's derivative claims pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 23.1.  Defendants also move on alternate grounds to dismiss Halpert's Section 14(a) claim as a matter of law.  Defendants additionally request that I dismiss Plaintiff's complaint with prejudice to amend.  Judge Stein has, on two prior occasions, dismissed Plaintiff's complaint relating to the same subject matter.

Because Plaintiff's complaint does not meet the requirements of Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 23.1, I must dismiss it in its entirety.  Because amendment would be futile, I am dismissing Plaintiff's complaint with prejudice.[1]

## I.   BACKGROUND

The following facts are taken from Plaintiff's Complaint, the J.P. Morgan Audit Committee Report on which the Complaint relies,[2] and pleadings and opinions in prior litigation between these two parties.

### A. Halpert's First Complaint

Halpert brought two previous complaints in this district before Judge Sidney Stein relating to the subject matter of his instant lawsuit.

On November 27, 2002, Halpert, a J.P. Morgan shareholder, filed his first derivative suit against Harrison and the other directors, officers, and members of the Board of Directors (the "Board").  Defendant's Memorandum of Law in Support of Motion to Dismiss, at 4 ("Def. Mot.").  Halpert's first complaint alleged derivative claims for breach of fiduciary duty, gross mismanagement, and corporate waste, as well as a claim for violation of Section 14(a) of the Securities Exchange Act of 1934 for failure to disclose material liabilities in SEC filings.  All of Halpert's causes of action arose from the Board's alleged failure to prevent J.P. Morgan from participating in fraudulent

---

[1] The Court would like to thank Keith Martorana of New York Law School for his assistance preparing this Opinion.

[2] Because the Complaint quotes from and refers to the 37-page Report of the J.P. Morgan Audit Committee, the sufficiency of which will decide this motion, I may consider the Report on a motion to dismiss.  See Chira v. Columbia Univ., 289 F. Supp. 2d 477, 482 (S.D.N.Y. 2003) (Baer, J.), citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it [on a 12(b)(6) motion] where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (quotations and citations omitted).

"forward transactions" with Enron Corporation, which triggered massive regulatory fines and civil litigation. See Halpert Enter. v. Harrison, 362 F. Supp.2d 426, 428 (S.D.N.Y. 2005) ("Halpert I"). At that point in time, Halpert had not made a demand on J.P. Morgan's Board to sue its directors. Halpert claimed instead that such demand would be futile. Halpert I, 362 F. Supp.2d at 429.

On March 28, 2005, Judge Stein dismissed Halpert's claims with leave to amend. Judge Stein held that the Halpert "failed to allege with particularity the futility of making a demand on the Board of Directors," as required for derivative actions by Fed. R. Civ. P. 23.1. Halpert I, at 433. Halpert's "complaint contain[ed] merely conclusory allegations that [did] not raise a reasonable doubt as to the Board's independence and disinterestedness and its exercise of reasonable business judgment." Id. at 432.

B.  Halpert's Second Complaint

On May 2, 2005, Halpert filed an amended complaint against J.P. Morgan re-alleging the same derivative claims. The complaint contained Halpert's Enron-related allegations, as well as six additional allegations that J.P. Morgan's Board: 1) failed to conduct sufficient due diligence to uncover the massive fraud at WorldCom; 2) failed to prevent the funding of illegal market timing of mutual funds; 3) failed to prevent the improper recommendation of mutual fund class B shares to investors, in violation of National Association of Securities Dealers ("NASD") rules; 4) failed to adequately separate investment banking and research functions of J.P. Morgan, in violation of NASD, New York Stock Exchange ("NYSE"), and SEC rules; 5) failed to prevent violations of SEC and NYSE rules related to underwriting IPOs; and 6) failed to prevent the destruction of documents requested by the SEC in connection with an investigation of J.P. Morgan. See Halpert Enter. v. Harrison, 2005 U.S. Dist. LEXIS 15022 (S.D.N.Y. July 26, 2005) ("Halpert II"). Again, Halpert did not make a demand on J.P. Morgan's Board to sue its directors, claiming instead that such demand would be futile. Halpert II at *3.

Again, Judge Stein dismissed Halpert's complaint. Judge Stein held that despite the additional allegations of wrongdoing, Halpert failed to sufficiently amend his complaint to state facts with particularity that established demand futility, as required by Rule 23.1. Halpert II, 2005 U.S. Dist. LEXIS 15022 at *9. Judge Stein also specifically

3

dismissed Halpert's Section 14(a) claim as a matter of law. Id. at *8-9.

### C. Halpert's Demand Letter

On October 3, 2005, Halpert sent a demand letter to J.P. Morgan's Board. Def. Mot., at 6. In addition to the seven allegations of wrongdoing listed in Halpert's second complaint, the demand letter added an eighth charge that the Board failed to prevent J.P. Morgan from charging excessive fees to arrange financing for Jefferson County, Alabama. Id. Specifically, Halpert's letter demanded that J.P. Morgan initiate suit against all Members of the Board of Directors and senior Officers who served J.P. Morgan between 1997 and 2005, seeking remuneration in the form of millions of dollars of salaries and other compensation paid to the named individuals. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl. Opp."), at 2.

### D. The Audit Committee Investigation

On October 18, 2005, the Board passed a resolution directing the Audit Committee of J.P. Morgan to initiate an investigation into the alleged wrongdoing. Pl. Opp., at 2. On November 6, 2005, the Audit Committee retained the law firm of Sullivan & Cromwell to assist in its investigation. Id.

Defendants claim that Sullivan & Cromwell conducted a thorough five-month investigation in which they interviewed forty individuals, including internal and outside counsel that had represented J.P. Morgan in the litigations surrounding the eight issues Halpert raised. Def. Mot., at 6. Defendants also claim that Sullivan & Cromwell conducted a thorough document review, reviewed depositions of J.P. Morgan employees taken in prior litigations, and reviewed court decisions and settlement agreements. Id. at 6. Finally, Defendants claim that Sullivan & Cromwell orally reported their investigative findings to the Audit Committee on three separate occasions. Defendants assert that, during those meetings, the members of the Audit Committee asked questions and received answers. Id. at 7.

Following Sullivan & Cromwell's investigation, the Audit Committee issued a 37-page written Report to the Board on April 12, 2006. Declaration of Stephanie Wheeler, October 11, 2006 ("Wheeler Decl."), Ex. A. The Report summarized J.P. Morgan's wrongdoing in the eight areas Plaintiff identified. Id. The Report also recommended that the Board refuse Halpert's demand to sue the directors, for four

reasons. First, Sullivan & Cromwell's investigation did not uncover any misconduct rising to the level of gross negligence on the part of any Officer or Director. Id. at 33-35. Secondly, settlements with regulators and civil litigants were entered into in good faith to avoid the risks of litigation. Id.at 35. Third, the potential costs of litigation against the directors greatly outweighed the potential benefits. Id. at 35. Lastly, as a result of remedial measures J.P. Morgan subsequently instituted, the likelihood of any repetition of the kind of wrongdoing alleged was low. Id. at 36.

On April 18, 2006, the Board discussed and accepted the Audit Committee's recommendation and officially refused Halpert's demand. Def. Mot., at 6.

E.  Halpert's Instant Complaint

On September 20, 2006, Halpert filed a third amended complaint in this court. Halpert again asserts derivative claims for breach of fiduciary duty, gross mismanagement, and corporate waste, as well as his Section 14(a) claim. Halpert's complaint reiterates the seven allegations of wrongdoing in his second amended complaint, and the eighth allegation raised in his demand letter relating to Jefferson County, Alabama. Halpert generally alleges that the directors failed to recognize systematic and pervasive wrongdoing and "red flags" at J.P. Morgan, and that due attention would have prevented the ensuing regulatory fines and civil damages.

Halpert asserts that the Board's refusal of his demand was "wrongful," because the Audit Committee failed to conduct a independent, good faith, reasonable investigation into the issues raised by his demand letter. Pl. Opp. at 2. Halpert alleges that although the Audit Committee summarized the results of and determinations in other cases and criminal investigations, it did not specifically consider whether these particular directors breached their fiduciary duties, given lower civil liability standards. Pl. Opp. at 2-3. Halpert further argues that the Audit Committee's interviews and document review were "superficial," in that the Audit Committee relied too heavily on interviews with former legal counsel who represented J.P. Morgan in the prior regulatory investigations and civil suits, rather than directly interviewing officers, employees, and other individuals with information relating to Defendants' individual roles in the alleged wrongdoing. Id. at 8. Halpert further contends that the Audit Committee failed to review all relevant internal corporate documents, and thus the Board did not inform itself of all material

information available to it.  Id. at 9.  Lastly, Halpert contends that the Board wrongfully relied on J.P. Morgan's purported remedial measures as a reason for refusing his demand. Id. at 12.

## II.     STANDARD OF REVIEW

When ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe all factual allegations in the complaint in favor of the non-moving party.  See Krimstock v. Kelly, 306 F.3d 40, 47-48 (2d Cir. 2002).  "However, factual allegations must be distinguished from '[c]onclusory allegations or legal conclusions masquerading as factual conclusions,' as the latter will not be accepted as true."  Burns v. Cook, 2006 U.S. Dist. LEXIS 77625, at *10 (N.D.N.Y. 2006), citing Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002).  The Court's consideration is normally limited to facts alleged in the complaint, documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.  See Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).  A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Derivative lawsuits must meet "a pleading standard higher than the normal standard applicable to the analysis of a pleading challenged under Rule 12(b)(6)."  Fink v. Weill, 2005 U.S. Dist. LEXIS 20659, at *9 (S.D.N.Y. 2005), citing Fed. R. Civ. P. 23.1.  In such cases, "[t]he complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority… and the reasons for the plaintiff's failure to obtain the action or for not making the effort."  Fed. R. Civ. P. 23.1.

Although Fed. R. Civ. P. 23.1 outlines the procedural rules with which a derivative action in federal court must comply, state law provides the substantive law governing a Board's refusal of a demand.  See Levner v. Prince Alwaleed Bin Talal Bin Abdulaziz Al Saud, 903 F. Supp. 452, 455 (S.D.N.Y. 1994), citing RCM Sec. Fund, Inc. v. Stanton, 928 F.2d 1318, 1330 (2d Cir. 1991); see also Kamen v. Kemper Fin. Servs.

Inc., 500 U.S. 90, 108-09 (1991); Halpert I, 362 F. Supp.2d 426, 430,[3] Here, because J.P. Morgan is a Delaware corporation, the parties agree that Delaware substantive law governs this derivative action.  See Pl. Complaint ¶ 17.

### III.   DISCUSSION

Under Delaware law, a shareholder wishing to bring a derivative suit must first properly demand that the board of directors take up the suit for the corporation, unless such a demand would be futile.  Sterling v. Mulholland, 1998 U.S. Dist. LEXIS 19550, *4 (S.D.N.Y. 1998), citing Kaplan v. Peat, Marwick, Mitchell & Co., 540 A.2d 726, 727-8 (Del. 1988).  If demand is refused, the derivative suit can only be brought if the shareholder shows that the board's refusal was "wrongful."  Levine v. Smith, 591 A.2d 194, 211 (Del. 1991).

The board's refusal of a demand is reviewed under the business judgment rule, which creates a "presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."  Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984).  Thus, the board's refusal is wrongful if its investigation was not reasonable or if the decision was made in bad faith.  Levine, 591 A.2d at 213.  The standard is "gross negligence."  See Smith v. Van Gorkom, 488 A.2d 858, 873 (Del. 1985); Ryan v. Aetna Life Ins. Co., 765 F. Supp. 133, 139 (S.D.N.Y. 1991).  To rebut the presumption of the business judgment rule, the burden is on plaintiff to plead with particularity facts that create a reasonable doubt as to the good faith or reasonableness of a board's investigation.  Spiegel v. Buntrock, 571 A.2d 767, 777 (Del. 1990); Grimes v. Donald, 673 A.2d 1207, 1219 (Del. 1996); see also RCM Sec. Fund, Inc. v. Stanton, 928 F.2d 1318, 1328 (2d Cir. 1991).[4]  Mere conclusory allegations are insufficient. Levine, 591 A.2d at 211.

---

[3] That said, because Delaware's pleading standard for derivative actions is "either identical to or consistent with the principles behind Fed. R. Civ. P. 23.1," federal courts freely adopt Delaware state law jurisprudence when applying the federal pleading standard for derivative actions.  See Levner v. Prince Alwaleed Bin Talal Bin Abdulaziz Al Saud, 903 F. Supp. 452, 456 n.4.

[4] "[U]nder Delaware law, the directors' decision 'will be shielded by the business judgment rule unless the shareholder plaintiff can carry the considerable burden of showing that the decision not to bring the lawsuit… was based on an unreasonable investigation.'"  Levner v. Prince Alwaleed Bin Talal Bin Abdulaziz Al Saud, 903 F. Supp. 452, 457, citing RCM Sec. Fund, Inc. v. Stanton, 928 F.2d 1318, 1328. "[F]ew, if any, plaintiffs surmount this obstacle." Id.

A. <u>Board's "Wrongful Refusal" to Sue</u>

Defendants argue that Plaintiffs have alleged no facts with the requisite particularity to overcome the presumption of the business judgment rule and create a reasonable doubt as to the "good faith" or "reasonableness" of the Board's investigation into whether J.P. Morgan should sue its directors.[5] Defendants point to the fact that Sullivan & Cromwell conducted a five-month investigation, interviewed 40 people, reviewed numerous documents, reported to the Audit Committee three times, and produced a 37-page report by the Audit Committee that specifically considered Halpert's eight allegations and provided four specific justifications as to why J.P. Morgan would not realize a benefit from suing its directors. Defendants note as well that Plaintiffs must allege facts showing "gross negligence" by the Board when it refused Halpert's demand.

The Audit Committee's actions, on their face, appear to be presumptively "reasonable" and in good faith. Defendants correctly note that lesser investigations have been held to be reasonable. See <u>Levine v. Smith</u>, 591 A.2d 194, 199 (Board merely issued letter stating that it "reviewed [plaintiff's] demand letter"); <u>Baron v. Siff</u>, 1997 Del. Ch. LEXIS 152, at *10 (Del. Ch. 1997) (Board issued refusal letter nine days after demand letter). Investigations involving similar activities have also been held to be reasonable. See <u>Mt. Moriah Cemetery v. Moritz</u>, 1991 Del. Ch. LEXIS 68 (Del. Ch. 1991) (where board appointed a committee which interviewed the charged parties, reviewed over 167,000 pages of documents, and produced a 163-page report, the investigation refuted any suggestion of gross negligence).[6]

Plaintiffs allege that the Committee merely referenced prior investigations, and

---

[5] At the outset, Defendants correctly note that "by making a pre-suit demand, a plaintiff concedes the independence and disinterestedness of the board." <u>Levine v. Smith</u>, 591 A.2d 194, 212; <u>Scattered Corp. v. Chicago Stock Exch.</u>, 701 A.2d 70, 74 (Del. 1997); see also <u>Levner v. Prince Alwaleed Bin Talal Bin Abdulaziz Al Saud</u>, 903 F. Supp. 452, 457. Plaintiffs can, however, plead facts relating to the Board's failure to act independently, insofar as those facts bear on the "reasonableness" or "bad faith" of the investigation leading to the refusal of demand. <u>Scattered Corp. v. Chicago Stock Exch.</u>, 701 A.2d at 74 ("Failure of an otherwise independent-appearing board or committee to act independently is a failure to carry out its fiduciary duties in good faith or to conduct a reasonable investigation. Such failure could constitute wrongful refusal.").

[6] Plaintiffs cite one older New York case where the court held a demand refusal to be wrongful. See <u>Syracuse Television, Inc. v. Channel 9, Syracuse, Inc.</u>, 273 N.Y.S.2d 16 (N.Y. Sup. Ct. 1966). However, in that case, the board "did not direct an investigation, it did not direct an audit, it did not refer the matter to committee… The board of directors did nothing." <u>Syracuse Television</u>, 273 N.Y.S.2d 16, 25. That is clearly not the case here.

thus failed to consider whether specific, individual directors breached their fiduciary duty. However, Plaintiffs cite no caselaw supporting that such consideration is a requirement of an investigation, without which gross negligence is present. Rather, "[w]hile a board of directors has a duty to act on an informed basis in responding to a demand… there is obviously no prescribed procedure that a board must follow." Levine v. Smith, 591 A.2d 194, 214; see also Litton Indus., Inc. v. Hoch, 1993 U.S. App. LEXIS 16992, at *9 (9th Cir. 1993) ("the directors need not show that they performed a perfect investigation.") Additionally, the Audit Committee's report specifically found that no officer or director acted in a grossly negligent manner, such as to violate their duty of care. Wheeler Decl., Ex. A at 33-34.[7]

Plaintiffs also allege that Sullivan & Cromwell conducted "superficial" interviews with counsel rather than direct interviews with the principals. However, "in any investigation, the choice of people to interview or documents to review is one on which reasonable minds may differ." Mt. Moriah Cemetery v. Moritz, 1991 Del. Ch. LEXIS 68, at *10-11 ("Inevitably, there will be potential witnesses, documents and other leads that the investigator will decide not to pursue. That decision will not be second guessed by this Court…"). In this case, it appears that the only way the Defendant could have avoided such criticism was if the Plaintiff himself was put in charge of the investigation.

Plaintiffs argue, without providing any supporting caselaw, that the Audit Committee, when it considered Halpert's demand, should not have considered the remedial measures that J.P. Morgan undertook in the wake of the alleged wrongdoing. However, Defendants provide two cases in which courts affirmed a board's refusal of demand in part because the board considered remedial measures already taken by the company. See Stein v. Bailey, 531 F. Supp. 684, 695 (S.D.N.Y. 1982) (court noted that

---

[7] Moreover, Plaintiff's underlying claim here appears to be a *Caremark* claim, in which plaintiffs allege that defendant directors are subject to personal liability for their lack of oversight over company actions. To state such a claim, "only a sustained or systematic failure of the board to exercise oversight – such as an utter failure to attempt to assure a reasonable information and reporting system exists – will establish the lack of good faith that is a necessary condition to liability." Stone v. Ritter, 911 A.2d 362, at *28 (Del. 2006), citing In re Caremark Int'l, 698 A.2d 959, 968 (Del. Ch. 1996). "Most of the decisions that a corporation, acting through its human agents, makes are… not the subject of director attention. Consequently, a claim that directors are subject to personal liability for employee failures is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." Id., citing Caremark, 698 A.2d 959, 968.

"reforms instituted at the recommendation of the Audit Committee had so far been successful and made recurrence unlikely"); Abramowitz v. Posner, 672 F.2d 1025, 1028 (2d Cir. 1982) (court noted that Audit Committees stated that corrective measures should prevent recurrence of wrongful activity). There appears to be no reason why the Audit Committee or Board should not have considered remedial measures already taken when they decided that suing J.P. Morgan's directors was not in the best interests of the company. Nor does it appear that such consideration would constitute "gross negligence."

Lastly, Plaintiffs have not plead facts with particularity that allege the Audit Committee did not act in "good faith." Plaintiffs have alleged that some of the Audit Committee members faced a threat of personal liability – in effect, that the Audit Committee members were investigating whether to sue themselves. Pl. Compl. ¶ 370. However, generally, "the mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors. . . ." Aronson, 473 A.2d at 815. To allege "bad faith," Plaintiff must allege specific facts that raise the question of whether the specific directors acted in "bad faith." Plaintiffs have not done so here.

In short, Plaintiff has made no allegations, aside from conclusory allegations, that the Audit Committee's investigation, and Board's subsequent refusal of Plaintiff's demand, rises to the level of "gross negligence." I must therefore dismiss Plaintiff's derivative claims against Defendants for breach of fiduciary duty, gross mismanagement, and corporate waste.

B. Section 14(a) Claim

Halpert additionally alleges that twelve Defendant directors violated Section 14(a) of the Securities Exchange Act of 1934 by issuing "materially false and misleading" written statements to shareholders in proxy statements. Pl. Compl. ¶ 379. Halpert thus seeks to void the election of these twelve directors. Pl. Compl. ¶ 381.[8] Defendants argue that Plaintiff's claim under Section 14(a) should be dismissed either for failure to meet the pleading requirements of Rule 23.1, or as a matter of law. I agree with both contentions.

---

[8] Defendants aver that nine of the twelve do not currently serve on J.P. Morgan's Board. Def. Mot., at 17.

10

Section 14(a) of the Securities Exchange Act provides that "it shall be unlawful for any person… in contravention of such rules and regulations as the [SEC] may prescribe… to solicit… any proxy or consent or authorization in respect of any security . . . registered pursuant to… this title." Fink v. Weill, 2005 U.S. Dist. LEXIS 20659, at *17, citing 15 U.S.C.A. § 78n(a). Rule 14a-9(a) promulgated thereunder provides that "[n]o solicitation subject to this regulation shall be made by means of any proxy statement… containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading…" Id., citing 17 C.F.R. § 240.14a-9(a).

Judge Stein previously dismissed Plaintiff's Section 14(a) claim for failure to plead demand futility with adequate particularity. Halpert II, 2005 U.S. Dist. LEXIS 15022, at *8-9. Similarly, I dismiss Plaintiff's Section 14(a) claim now for failure to plead demand refusal with adequate particularity.

Alternatively, Judge Stein previously dismissed Plaintiff's Section 14(a) claim because even were it a direct claim, it would fail on its merits. The Section 14(a) claim amounted to "an attempt to dress up an ordinary state breach of fiduciary duty claim in federal securities law clothing." Halpert II, 2005 U.S. Dist. LEXIS 15022, at *9; see also Fink v. Weill, 2005 U.S. Dist. LEXIS 20659, at *17-18 (dismissing similar claim against Citigroup), citing Koppel v. 4987 Corp., 167 F.3d 125, 133-34 (2d Cir. 1999) ("no general cause of action lies under § 14(a) to remedy a simple breach of fiduciary duty.") I see no reason to reverse Judge Stein's analysis today.

For the foregoing reasons, and for the simple reason that Plaintiff did not oppose dismissal of his Section 14(a) claim in his opposition papers, I must dismiss Plaintiff's Section 14(a) claim.

C. Leave to Amend

Plaintiff requests that I grant him leave to amend his complaint a third time if I dismiss it now. Defendants request that I deny Plaintiff leave to amend his complaint, as amendments would be futile. See Fink v. Weill, 2005 U.S. Dist. LEXIS 20659, at *20-21 (court denied plaintiffs leave to file a third amended complaint against Citigroup based on similar allegations, even where plaintiffs had not yet filed a demand letter, stating,

"Leave need not be granted, however, where the amendment would be futile"), <u>citing</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).

At this point in time, it is highly unlikely new facts will come to light regarding the J.P. Morgan directors' actions that might help Plaintiff meet the pleading bar for a derivative lawsuit. Plaintiff proffered no such facts at oral argument. Thus, I am denying Plaintiff leave to amend his complaint a third time.

## IV.    CONCLUSION

For the foregoing reasons, I must dismiss Plaintiff's complaint in its entirety, with prejudice to leave to amend.

The Clerk of the Court is directed to close this matter and remove it from my docket.

**SO ORDERED.**

**February ___, 2007**
**New York, New York**

_____
                                **U.S.D.J.**

"Leave need not be granted, however, where the amendment would be futile"), citing Foman v. Davis, 371 U.S. 178, 182 (1962).

At this point in time, it is highly unlikely new facts will come to light regarding the J.P. Morgan directors' actions that might help Plaintiff meet the pleading bar for a derivative lawsuit. Plaintiff proffered no such facts at oral argument. Thus, I am denying Plaintiff leave to amend his complaint a third time.

## IV. CONCLUSION

For the foregoing reasons, I must dismiss Plaintiff's complaint in its entirety, with prejudice to leave to amend.

The Clerk of the Court is directed to close this matter and remove it from my docket.

**SO ORDERED.**

February 14, 2007
New York, New York

_____
U.S.D.J.

12